UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **ENRIQUE NIETO AND** § | |
| **MARTHA NIETO,** § | |
| Plaintiffs, § | |
| § | **CIVIL ACTION NO. 1:17-cv-210** |
| v. § | |
| § | |
| **GREAT LAKES REINSURANCE** § | |
| **(U.K.) SE, AND LEE BISHOP** § | |
| Defendants. § | |

## NOTICE OF REMOVAL

Defendant Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE)[1] ("Great Lakes" or "Defendant"), files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### I.   BACKGROUND

1. On August 8, 2017, Plaintiffs Enrique Nieto and Martha Nieto ("Plaintiffs") filed this action in the 197th Judicial District Court of Willacy County, Texas, bearing Docket Number 2017-CV-0508-A (the "State Court Action") against Great Lakes and Lee Bishop ("Bishop"). Plaintiffs' Original Petition (the "Complaint") is the live pleading in this case. (A copy of the Complaint is attached hereto in accordance with 28 U.S.C. § 1446(a) as **Exhibit C-2**).

2. Great Lakes was served with Plaintiffs' Original Petition on September 12, 2017. On September 5, 2017, Great Lakes filed its Original Answer and Affirmative Defenses.[2] Accordingly, this Notice of Removal of the State Court Action to the United States District Court

---

[1] Improperly named as "Great Lakes Reinsurance (U.K.) SE" in Plaintiffs' Original Petition, but appearing in its correct capacity herein.
[2] *See* **Exhibit C-4**.

is timely filed by Great Lakes, it being filed no more than thirty (30) days after service of Great Lakes, in accordance with 28 U.S.C. §§ 1441 and 1446.

## II.     BASIS FOR REMOVAL: DIVERSITY JURISDICTION

3.     Removal of the state court action to this Court is proper pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b) because: (1) there is complete diversity between Plaintiffs and the properly joined defendant, Great Lakes, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

**A.     Complete diversity exists between Plaintiffs and the properly joined defendant, Great Lakes.**

4.     Plaintiffs' state court action may be removed to this Court because it arises under 28 U.S.C. § 1332.

5.     Plaintiffs allege in the Complaint that they own the property at issue in this lawsuit, which is located in San Perlita, Texas; therefore, upon information and belief, Plaintiffs are citizens of Texas.[3]

6.     Defendant Great Lakes is a foreign non-admitted surplus lines insurer engaged in the business of insurance in the State of Texas, and is incorporated and has its principal place of business in Germany; therefore, Great Lakes is a citizen of Germany.

7.     Thus, there is complete diversity of citizenship between Plaintiffs and Great Lakes.

**B.     Bishop was improperly joined.**

*i.     Applicable standard for improper joinder.*

8.     The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper.[4] Under Section 1441(b), while complete diversity of citizenship must

---

[3] *See* Complaint, at ¶ 15.

exist between all plaintiffs and all defendants to establish federal subject matter jurisdiction, only the citizenship of *properly* joined parties can establish federal subject matter jurisdiction.[5] The doctrine of improper joinder "prevents defeat of federal removal jurisdiction premised on diversity jurisdiction by an improperly joined, non-diverse defendant."[6] Citizenship of an improperly joined defendant is disregarded entirely in determining whether complete diversity exists.[7] "Normally, a court reviewing allegations of fraudulent joinder should refrain from conducting an evidentiary hearing but may utilize a summary judgment-like procedure."[8] "A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition."[9]

9. Improper joinder is established when the removing party meets the burden of showing either (1) there was actual fraud in pleading the jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant under state law.[10] In order to establish the second ground for improper joinder, the removing party bears the burden of proving that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[11] "This possibility [of recovery], however, must be reasonable, not merely theoretical."[12] "[W]hether the plaintiff has stated a valid state

---

[4] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[5] *See* 28 U.S.C. § 1441(b); *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).
[6] *Borden v. Allstate Inc. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).
[7] *Smallwood*, 385 F.3d at 572.
[8] *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000) (citing *Burchett v. Cargill*, 48 F.3d 173, 176 (5th Cir. 1995)).
[9] *TAJ Properties, LLC v. GAB Robins North America, Inc.*, 2011 WL 2162321, at *2 (S.D. Tex. 2011) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)).
[10] *Smallwood*, 385 F.3d at 572; *Cantor v. Wachovia Mortg., FSB*, 641 F.Supp.2d 602, 606 (N.D. Tex. 2009); *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F.Supp.2d 901, 905 (W.D. Tex. 2005).
[11] *Smallwood*, 385 F.3d at 572.
[12] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added).

law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery."[13]

10. The Fifth Circuit recently held in *Int'l Energy Ventures Management, L.L.C. v. United Energy Group, Ltd* that federal courts should use the federal court pleading standard when conducting the Rule 12(b)(6)-type analysis of an improper joinder claim to determine if the plaintiff has stated a claim against a non-diverse defendant.[14] A plaintiff fails to state a claim upon which relief may be granted as required under Fed. R. Civ. P. 12(b)(6) where a plaintiff's factual allegations do not show a right to relief that is plausible and above mere speculation.[15] "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."[18]

11. To avoid a dismissal for failure to state a claim, a plaintiff must plead *specific facts*, not mere conclusory allegations.[19] The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[20] The Court must not accept as true conclusory allegations or unwarranted deductions of fact.[21] The United States Supreme Court has made clear that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic

---

[13] *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999).
[14] *Int'l Energy Ventures Management, L.L.C. v. United Energy Group, Ltd*, 818 F.3d 193, 200 (5th Cir. 2016); *see also Buettner v. USA Gymnastics*, No. 4:16-CV-0157-A, 2016 WL 2918107, at *2 (N.D. Tex. May 18, 2016).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).
[16] *Id.*
[17] *Id.* at 678.
[18] *Id.*
[19] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1997)).
[20] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[21] *Collins*, 224 F.3d at 498.

recitation of the elements of a cause of action *will not do*."[22] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice," and something more than "unadorned 'the-defendant-unlawfully-harmed-me accusation' is needed."[23]

> ii. *There is no reasonable basis for the Court to predict Plaintiffs might be able to recover against Bishop under Chapter 541 of the Texas Insurance Code.*
>
> **a. Section 541.060(a)(1) of the Texas Insurance Code**

12. Tracking the language of Section 541.060(a)(1) of the Texas Insurance Code, Plaintiffs allege Bishop "misrepresent[ed] to Plaintiffs material facts relating to the coverage at issue, [which] constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance." Plaintiffs attempt to specify Bishop's actions that constitute a violation of the Texas Insurance Code, alleging that Bishop: 1) failed to conduct a reasonable inspection; 2) stated that Plaintiffs' damages were less severe than they were; 3) used his own statement about the non-severity of the damage as a basis for denying or underpaying damages; and 4) failed to provide an adequate explanation for the compensation Plaintiffs received. However, there is no reasonable basis to predict that Plaintiff can recover on his claim that Bishop violated Section 541.060(a)(1) because all of Plaintiffs' "factual" allegations regarding Bishop solely relate to his inspection of the Property, not details of the policy or coverage at issue.

13. Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue."[24] Judge Crane in the Southern District of Texas recently held in *Hay* that an in-state adjuster was improperly joined and the plaintiff failed to state a claim against the in-state adjuster under this provision. The plaintiff in *Hay* alleged the

---

[22] *Twombly*, 550 U.S. at 555 (emphasis added).
[23] *Iqbal*, 556 U.S. at 667.
[24] Tex. Ins. Code § 541.060(a)(1).

in-state adjuster violated Section 541.060(a)(1) by "misrepresenting one or more material facts and/or policy provisions relating to coverage."[25] The Court held "[t]he misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage"[26] "[A]ctions or omissions by an adjuster in making an inspection are not within the scope of § 541.060(a)(1) because they do not relate to the coverage at issue."[27] The Court in *Hay* held the plaintiff failed to state a claim under Section 541.060(a)(1) because "aside from her conclusory assertion that he violated this provision—Ms. Hay fails to allege that [the adjuster] made any misrepresentation about the details of the policy at issue."[28]

14. Similarly, in *Messersmith v. Nationwide Mut. Fire Ins. Co.*, the Northern District stated that a misrepresentation under this section "must be about the details of a policy, not the facts giving rise to a claim for coverage."[29] "[The adjuster] would have had to represent that [the insured] would receive a particular kind of policy that it did not receive or denied coverage against a loss under specific circumstances that it previously had represented would be covered."[30] In *Messersmith*, the plaintiff alleged the adjuster claimed "there was no damage to [the insured's] roof when in fact there was damage" and "that the damage was only cosmetic in nature when in fact there was leaking resulting from the damage."[31] The Northern District found these allegations did not give rise to a claim against the defendant adjuster because they were not about the breadth or existence of coverage. Instead the allegations were about the facts that gave

---

[25] *Id.*
[26] *Hay v. Great Lakes Reinsurance (UK) SE, et al*, Case No. 7:16-cv-00235 (S.D. Tex. Aug. 4, 2016), Order Denying Plaintiff's Motion to Remand and Denying as Moot Defendant's Motion to Dismiss, at *7.
[27] *Id.*
[28] *Id.*
[29] *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721 (N.D. Tex. 2014).
[30] *Id.* at 724 (quoting *U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994) (citing *Parkins v. Tex. Farmers Ins. Co.*, 645 S.W.2d 775, 776–77 (Tex. 1983))).
[31] *Id.* at 724 (quotation marks removed).

rise to a claim under the policy.[32]

15. Further, several federal courts have held, "even though an adjuster is a 'person' under the Insurance Code, an adjuster cannot be held liable for violation of the [Texas Insurance] Code unless he causes an injury distinguishable from the insured's actions."[33] "In other words, the adjuster must have committed some act prohibited by the statute, not just be connected to an insurance company's denial of coverage."[34] Further, "post loss statements regarding coverage are not misrepresentations under the Insurance Code."[35]

16. Specifically, the Southern District of Texas has held on numerous occasions that, when an adjuster's actions "can be accomplished by [the insurer] through an agent," the adjuster's actions "are indistinguishable from [the insurer's] actions" and hence are insufficient to support a claim against the adjuster.[36] For example, in *Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, the court held "[s]pecified paragraphs in the petition are directed to [the adjuster], but for the most part they merely track the statutory provisions, alleging only that [the adjuster] inspected the Property and that he submitted an undervalued repair estimate ... These actions can be accomplished by [the insurer] through an agent, and as such, are indistinguishable from [the insurer]'s actions."[37] Based on this conclusion, the court denied the plaintiffs' motion to remand.[38] Similarly, in *Atascocita Realty Inc. v. W. Heritage Ins. Co.*, the Southern District dismissed an insured's claims against individual adjusters for conduct undertaken in their capacity as employees and agents of corporate defendants because "such claims are, in essence,

---

[32] *Id.*
[33] *Aguilar v. State Farm Lloyds*, No. 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015) (citing *Nasti v. State Farm Lloyds*, No. 4:13–CV–1413, 2014 WL 710458, at *3 (S.D. Tex. Feb. 19, 2014); *Novelli v. Allstate Texas Lloyd's*, No. H–11–2690, 2012 WL 949675, at *4–5 (S.D. Tex. Mar. 19, 2012)).
[34] *Id.* (citing *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F.Supp.3d 721, 724 (N.D. Tex.2014)).
[35] *Id.* (citing *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 445–56 (Tex.2012); *One Way Investments, Inc. v. Century Surety Co.*, No. 3:14–CV–2839, 2014 WL 6991277, at *4–5 (N.D. Tex. Dec. 11, 2014)).
[36] *Nasti*, 2014 WL 710458, at *3.
[37] No. H–10–1846, 2011 WL 240335, at *14 (S.D. Tex. Jan.20, 2011).
[38] *Id.*

claims against the insurer."[39]

17. The allegations in this case are no different. Plaintiffs allege Bishop failed to conduct a reasonable inspection of the property and did not give an adequate explanation as to the alleged damages on the property. On the face of these allegations, Plaintiffs have failed to state a claim against Bishop for violation of Section 54.1060(a)(1). Just as in the cases cited above, Bishop's alleged actions are indistinguishable from Great Lakes' alleged actions, and all of Plaintiffs' allegations regarding Bishop relate solely to his inspection of the property. Beyond merely tracking the language of the Insurance Code, which is insufficient to state a claim upon which relief may be granted, Plaintiffs make no specific factual allegation that Bishop made any representations to him regarding provisions of the policy or the breadth and existence of coverage, as is required to state a claim under Section 541.060(a)(1).[40] Further, Plaintiffs have not and cannot allege Bishop had authority to settle claims or make coverage determinations. Therefore, based on the allegations in the Complaint, there is no reasonable basis to predict Plaintiffs can recover against Bishop for alleged violations of Section 541.060(a)(1).

          **b.     Sections 541.060(a)(2), (a)(3), (a)(4), and (a)(7) of the Texas Insurance Code.**

18. Also tracking the language of Sections 541.060(a)(2), (a)(3), (a)(4), and (a)(7) of the Texas Insurance Code, Plaintiffs allege Bishop "failed to make an attempt to settle Plaintiffs' claim in a fair manner," "failed to explain to Plaintiffs the reasons for his offer of an inadequate settlement," "fail[ed] within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a Reservation of Rights to Plaintiffs" and "did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' interior and exterior

---

[39] No. 4:10–CV–4519, 2012 WL 4052914, at *3 (S.D. Tex. Sept 13, 2012).
[40] *See TAJ Properties, LLC v. GAB Robins North America, Inc.*, 2011 WL 2162321, at *2 (S.D. Tex. 2011) (holding the plaintiffs' its mere tracking of the vague language of the statutes fail to state a reasonable basis for predicting that the Texas Insurance Code would allow recovery against the in-state adjuster).

damages." Plaintiffs, however, have not and cannot allege Bishop had any authority or control over the settlement of Plaintiffs' insurance claim; therefore, Plaintiffs' claims against Bishop must fail.

19. Addressing many of these same allegations under the same Insurance Code provisions, the Court stated in *Hay* that "[e]ach of these violations is based on one common thread of liability: the denial of a valid claim."[41] The Court further held:

> Even assuming that an adjuster may be held liable for these provisions, Ms. Hay has pled no facts alleging that, as an adjuster, Mr. Lopez had any authority to settle claims on behalf of Great Lakes. Nor has Ms. Hay alleged that Mr. Lopez had any control over the timeliness of communications regarding her claim, or that he contributed in some way to a delay in the disposition of her claim. Instead, she merely claims that his investigation was "outcome-oriented," without alleging any facts that would plausibly give rise to any liability against Mr. Lopez under these provisions.[42]

Thus, the Court determined the plaintiff failed to state a claim against the in-state adjuster under Sections 541.060(a)(2), (a)(3), and (a)(4), and the in-state adjuster was improperly joined because the plaintiff failed to allege any facts that the adjuster had any authority to settle claims on behalf of Great Lakes or had any control over the timeliness of communications regarding the claim.[43]

20. Following this same reasoning, the Southern District, in *Lopez v. United Prop. & Cas. Ins. Co.*, recently held "[t]he majority of federal courts that have addressed [Section 541.060(a)(2)(A)] have found that this section applies only to insurers, and that it does not apply to adjusters" because the adjuster does not have settlement authority on behalf of the insurer.[44]

---

[41] *Id.* at *8.
[42] *Id.*
[43] *Id.*
[44] *Lopez v. United Prop. & Cas. Ins. Co.*, No. 3:16-CV-0089, 2016 WL 3671115, at *3 (S.D. Tex. July 11, 2016) (citing *Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.*, 3:15–CV–3741–D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016) ("Massey and Cagle are both adjusters, and "[a]n adjuster 'cannot be held liable under this section because, as an adjuster, he does not have settlement authority on behalf of the insurer.'") (quoting *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F.Supp.3d 721, 724 (N.D. Tex. 2014)); *Doss v. Warranty*

The same reasoning can be applied to a claim under Texas Insurance Code Section 541.060(a)(7) for "refusing to pay a claim without conducting a reasonable investigation with respect to the claim," as adjusters do not have authority to pay a claim on behalf of the insured. In *Lopez*, the Court also stated that "other federal courts have held that [Sections 541.060(a)(3) and (a)(4)] are not applicable to adjusters" because these provisions are "aimed at the timeliness of communications to an insured" and "none of [the insured's] allegations against [the adjuster] assert that she was untimely or slow to act."[45] "Instead, [the insured] complains that [the adjuster's] investigation was 'substandard.'"[46] For these reasons, the Court in *Lopez* found the plaintiff had failed to state a claim against the in-state adjuster under Sections 541.060(a)(2)(A), (a)(3), and (a)(4) of the Texas Insurance Code.[47]

21. Further, regarding Section 541.060(a)(3), the Court in *Mainali Corp. v. Covington Specialty Ins. Co.* held "an adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise or settlement of a claim."[48]

22. Regarding section 541.0606(a)(4), the court in *One Way Investments, Inc.* held

---

*Underwriters Ins. Co.*, 04–11–00776–CV, 2012 WL 5874316, at *2 (Tex. App.–San Antonio Nov. 21, 2012, no pet.) (noting that provisions such as § 541.060(a)(2)(A) apply "only to the insurer-insured relationship"); *Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.*, 05–14–01491–CV, 2016 WL 1242480, at *10 (Tex. App.–Dallas Mar. 30, 2016, no. pet. h.); *but see Roach v. Vehicle*, No. 3:15–CV–3228–G, 2016 WL 795967, at *5 (N.D. Tex. Feb. 29, 2016) (finding adjusters may be liable under § 541.060(a)(2) because "the insurance adjuster, as the person primarily responsible for investigating and evaluating insurance claims, has the ability to affect or bring about the 'prompt, fair, and equitable settlement' of claims, because it is upon his investigation that the insurance company's settlement of a claim is generally based.")).

[45] *Id.* (citing *Mainali Corp. v. Covington Specialty Ins. Co*., 3:15–CV–1087–D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015) ("[A]n adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim."); *One Way Investments, Inc. v. Century Sur. Co*., 3:14–CV–2839–D, 2014 WL 6991277, at *5 (N.D. Tex. Dec. 11, 2014) ("[A]n adjuster cannot be held liable under [§ 541.060(a)(4)(A)] because an adjuster does not have authority on behalf of the insurer to affirm or deny coverage of a claim to a policyholder.")).

[46] *Id.*
[47] *Id.*
[48] No. 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015).

---

"an adjuster cannot be held liable under this section because an adjuster does not have authority on behalf of the insurer to affirm or deny coverage of a claim to a policyholder."[49]

23. In this case, Plaintiffs do not and cannot contend that Bishop had settlement authority on behalf of Great Lakes. Rather, Bishop's sole role was to assess the alleged damage to the property. This is reflected by the fact that Plaintiffs admit in their allegations in the Complaint that *Great Lakes* allegedly told Plaintiff via letter on May 18, 2016 that "*Great Lakes* would not be able to compensate Plaintiffs for any damages or repairs incurred."[50] This is further reflected by all of the "factual" allegations in Plaintiffs' Complaint regarding Bishop, which only relate to the inspection of the Property and the report he prepared as a result of that inspection. Plaintiffs have not and cannot allege Bishop was under any obligation to provide Plaintiffs with an explanation for Great Lakes' decision on the claim at issue. Additionally, Plaintiffs have not and cannot allege Bishop had authority to affirm or deny coverage. Plaintiffs failed to state a claim against Bishop under Sections 541.060(a)(2), (a)(3), (a)(4), and (a)(7) of the Texas Insurance Code, and, thus, Bishop was improperly joined.

> iii. *There is no reasonable basis for the Court to predict Plaintiffs might be able to recover against Bishop for fraud.*

24. Further, Plaintiffs fail to state a claim upon which relief may be granted against Bishop for fraud because Plaintiffs have not and cannot allege they relied on any alleged representation by Bishop. In order to successfully maintain a claim for fraud, a plaintiff must show that the defendant (a) made a representation to the plaintiff; (b) the representation was material; (c) the representation was false; (d) when the representation was made, the defendant knew the representation was false or made the representation with reckless disregard for its truth; (e) the defendant made the representation with the intent that the plaintiff act on the

---

[49] *Id.*
[50] *See* Complaint, ¶ 23 (emphasis added).

representation; (f) <u>the plaintiff relied on the representation</u>; and (g) the representation caused injury to the plaintiff.[51]

25. In this case, the only act Plaintiffs allege they took was to purchase insurance from Great Lakes. Plaintiffs state "Plaintiffs, to their detriment, purchased Great Lakes' Policy in exchange for a benefit Great Lakes knew the Plaintiffs would not receive."[52] Further, Plaintiffs allege they "relied to their detriment upon the false, fraudulent, and deceptive acts and practices employed by Defendants in performing an inspection, investigation, and evaluation of Plaintiffs' Storm damages." However, Plaintiffs do not provide any factual support as to how they relied to their detriment on any action or inaction by Bishop. Moreover, Plaintiffs do not and cannot allege that Bishop was involved in the sale of the insurance policy at issue to Plaintiffs or that they took any action in reliance on any alleged representation by Bishop.

26. Further, Federal Rule of Civil Procedure 9(b) imposes an additional burden on the Plaintiff to detail facts and lay out the "the who, what, when, where, and how of a fraud."[53] Plaintiffs have not met this burden. Because Plaintiffs have not established, and cannot establish, the elements necessary for a fraud claim against Bishop (or Great Lakes for that matter), there is no reasonable basis to predict that Plaintiffs can prevail on this claim.

### iv. *There is no reasonable basis for the Court to predict Plaintiffs might be able to recover against Bishop for conspiracy to commit fraud.*

27. A claim for conspiracy is a derivative tort.[54] "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."[55] Because Plaintiffs have failed to state a claim for

---

[51] *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).
[52] *See* Compl., 21.
[53] *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010).
[54] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).
[55] *Id.*

any underlying tort against Bishop (or Great Lakes for that matter), Plaintiffs have also failed to state a claim for conspiracy against Bishop. Therefore, there is no reasonable basis to predict Plaintiffs could recover against Bishop on this claim.

C.  **Amount in Controversy Exceeds $75,000.**

28.  Plaintiffs allege in their Complaint that the amount in controversy will not exceed $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees, and Plaintiffs attached a "binding stipulation" to their complaint in an attempt to limit Plaintiffs' recovery to an amount less than $75,000 so as to avoid federal jurisdiction. However, Plaintiffs' statements regarding the amount in controversy were made in bad faith solely in an attempt to evade federal jurisdiction, and the Court should disregard them because Plaintiffs sent a demand letter to Great Lakes that establishes the amount in controversy exceeds $75,000.[56]

29.  In general, the amount in controversy is determined by the amount sought on the face of the state court petition, <u>so long as the claim is made in good faith</u>.[57] Where state law prevents a plaintiff from alleging a specific amount of damages in the complaint, a defendant must demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000.[58] "The district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy."[59]

---

[56] *See* **Exhibit E**.
[57] *Espinoza v. Allstate Texas Lloyd's*, 222 F. Supp. 3d 529, 533 (W.D. Tex. 2016) (citing *St. Paul Reins. Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).
[58] *Id.* (citing *Garcia v. Koch Oil Co. of Tex. Inc*., 351 F.3d 636, 638–39 (5th Cir. 2003); *Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 882–83 (5th Cir. 2000); *De Aguilar*, 47 F.3d at 1410–11).
[59] *Id.* (citing *Greenberg*, 134 F.3d at 1253 (footnotes omitted); *Garcia*, 351 F.3d at 639 (holding that the defendant may prove claims by demonstrating that the claims are likely above $75,000 or by setting forth facts in controversy that support a finding of the requisite amount)).

Courts have considered demand letters as such evidence in determining whether defendants have met the preponderance burden.[60]

30. If a defendant meets their burden, removal is proper, unless a plaintiff can show as a matter of law that he will not be able to recover more than the damages for which he has prayed in the state court complaint.[61] A plaintiff may do so by pointing to a state law that prevents recovery in excess of the damages sought in the state court petition or by filing a binding stipulation or affidavit with the petition.[62]

31. "<u>The inquiry, however, does not end merely because the plaintiff alleges damages below the threshold.</u>"[63] "The face of the plaintiff's pleading will not control if made in bad faith."[64] As the Fifth Circuit held in *De Aguilar v. Boeing, Co.*, the rules enacted by Texas that "strictly prohibit plaintiffs from pleading for specific amounts in cases of unliquidated damages . . . have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading."[65] "Such manipulation is surely characterized as bad faith."[66] "[T]actical manipulation [by the] plaintiff cannot . . . be condoned."[67]

32. In this case, Plaintiffs sent a demand letter to Great Lakes on September 19, 2016, in which they demanded Great Lakes pay to Plaintiffs $26,267.14 in actual damages, $10,000 for mental anguish, and $10,506.85 for attorney's fees to date, for a total demand of $46,773.99.

---

[60] *Id.* (citing *Hartford Ins. Grp. v. Lou–Con Inc.*, 293 F.3d 908, 910–12 (5th Cir. 2002) (per curiam); *Greenberg*, 134 F.3d at 1254–55; *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994); *Molina v. Wal–Mart Stores Tex., L.P.*, 535 F.Supp.2d 805, 808 (W.D. Tex. 2008) (citations omitted)).
[61] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).
[62] *Id.*
[63] *Id.* (emphasis added).
[64] *Id.*
[65] *Id.*
[66] *Id.* (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir.1985)).
[67] *Boelens*, 759 F.2d at 507.

Despite their attempt to limit their damages through their "stipulation" in the Complaint, Plaintiffs also state in their Complaint that they are seeking three times their actual damages, in addition to attorney's fees, mental anguish damages, and various other forms of monetary relief. Three times the amount of actual damages alleged in the demand letter, adds up to $78,801.42. This amount clearly exceeds the $75,000 amount in controversy threshold and does not even include the other types of damages Plaintiffs seek or the additional attorney's fees they have likely incurred since September 19, 2016, when Plaintiffs sent the demand letter to Great Lakes.

33. Additionally, the fact that Plaintiffs' attempt to limit damages in their Complaint was made in bad faith is further demonstrated by the statement in their demand letter in which their attorney states "if our clients' demand is not paid . . . we will seek to recover a significant amount of additional damages including, but not limited to, extra-contractual damages, additional attorneys' fees, statutory interest, court costs and exemplary damages." Additionally, despite the "binding stipulation" included with their Complaint, Plaintiffs state in their Complaint that "a jury, however, will ultimately determine the amount of monetary relief actually awarded", "Plaintiffs reserve the right to prove the amount of damages at trial", and "Plaintiffs reserve the right to amend their petition to add additional counts upon further discovery and as their investigation continues." These statements further demonstrate that Plaintiffs' attempt to "limit" damages in their pleadings was solely for the purpose of evading federal jurisdiction. Plaintiffs' demand letter clearly indicates Plaintiffs have every intention of seeking the full amount of damages alleged therein and alleged in the Complaint.

34. For these reasons, the amount in controversy requirement for removal set forth in 28 U.S.C. § 1446(c)(2)(A)–(B) is satisfied.

### III. VENUE

35. Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the 197th Judicial District Court of Willacy County, Texas, the forum in which the removed action was pending.

### IV. ADDITIONAL REQUIREMENTS

36. Great Lakes has provided notice to Plaintiffs through delivery of a copy of this Notice and the state court Notice of Filing of Notice of Removal to Plaintiffs' counsel of record, and has also provided notice to the Clerk of Court for the 197th Judicial District Court of Willacy County, Texas through the filing of this Notice and the Notice of Filing of Notice of Removal into the record of the state court action.

37. Copies of all pleadings, process, orders, request for trial by jury, and other filings in the state-court suit are attached to this notice as required by 28 U.S.C. § 1446(a).[68]

38. Pursuant to Federal Rule of Civil Procedure 81 and 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by copies of the following:

| | |
|---|---|
| **Exhibit A**: | Listing of All Parties and Counsel of Record; |
| **Exhibit B**: | Civil Cover Sheet; |
| **Exhibit C**: | Index of All Documents Filed in State Court Action; |
| **Exhibits C-1 - C-6**: | Copies of all filings in State Court Action and State Court Docket Sheet; |
| **Exhibit D**: | List of Action Being Removed; |
| **Exhibit E**: | Demand letter. |

---

[68] *See* **Exhibit C**: Index of All Documents Filed in State Court Action.

WHEREFORE, Defendant, Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE), prays that this matter be removed to the United States District Court for the Southern District of Texas, Brownsville Division, for further proceedings and disposition.

Respectfully submitted,

By: */s/ Jordan Corbitt*
**Eddy De Los Santos**
Texas Bar No. 24040790
Federal ID No. 602417
**Jordan Corbitt**
Texas Bar No. 24101647
Federal ID No. 3005714
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ. P.C.**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 - Telephone
(713) 650-9701 - Facsimile

*Attorneys for Defendant Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE)*

## CERTIFICATE AND NOTICE OF FILING

I certify that on October 5, 2017, the Notice of Removal was sent to the District Clerk of Willacy County, Texas, and that written notice of filing of the Notice of Removal was served via certified mail, return receipt requested, upon the attorney of record for Plaintiffs.

*/s/ Jordan Corbitt*
Jordan Corbitt

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on October 5, 2017, the foregoing Notice of Removal was served on counsel for Plaintiffs via Certified Mail, Return Receipt Requested, pursuant to the Federal Rules of Civil Procedure.

Martin J. Phipps
J. Gabriel Ortiz
Phipps, LLP
102 9th Street
San Antonio, Texas 78215
**Via CMRRR#7014 2870 0000 2457 1910**

*/s/ Jordan Corbitt*
Jordan Corbitt